IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**JUAN CARLOS PEREZ-GARCIA, et al.,**

   **Plaintiffs,**

   v.

**PUERTO RICO PORTS AUTHORITY, et al.,**

   **Defendants,**

   v.

**KINGFISHER AIR SERVICES, INC., et al.,**

   **Third-Party Defendants**

Civil No. 08-1448 (GAG)

## ORDER

Juan Carlos Perez-Garcia ("Plaintiff") filed the present action against Puerto Rico Ports Authority ("PRPA"), Caribbean Airport Facilities, Inc. ("CAF"), and their respective insurance companies,[1] for damages sustained when a golf cart fell from the second level at the San Juan International Airport ("SJU Airport"). (See Docket No. 388). Plaintiff was being transported to Kingfisher Air Services' ("KF") hangar facility at the SJU Airport on May 2, 2006, when the golf cart fell from a vertical reciprocating conveyor ("VRC") on the second floor to the first floor. After Plaintiff filed his complaint, CAF filed a third-party complaint against KF, KF's insurance company Antilles Insurance Company ("Antilles"), Club Car LLC ("Club Car") and Bayamon Golf Cars ("Bayamon Golf") seeking contribution and/or indemnity from these defendants in the event CAF Defendants were found liable in the original action.

The present matter involves two motions *in limine*, one submitted by Plaintiffs (Docket No.

---

[1] ACE Property and Casualty Insurance Company ("ACE") and Chartis Insurance Company - Puerto Rico ("Chartis")

**Civil No. 08-1448 (GAG)**                                        2

635) and one submitted by Club Car (Docket No. 647), both seeking to exclude the expert testimony of David Renfroe ("Renfroe"). Plaintiffs argue that certain portions of Renfroe's testimony should be excluded because Renfroe fails to substantiate his opinions with factual evidence or scientific principles. (See Docket No. 635 at 9.) Club Car generally argues that Renfroe does not qualify as an expert as required by Rule 702 and Daubert v. Merrell Dow Pharm., 509 U.S. 579, 597 (1993), or that his testimony would be unfairly prejudicial under Rule 403. (See Docket No. 647 at 8-11.) CAF and PRPA opposed both motions at Docket Nos. 667 and 677 respectively. For the following reasons the court **GRANTS in part and DENIES in part** Plaintiffs motion at Docket No. 635 and **GRANTS in part and DENIES in part** Club Car's motion at Docket No. 647.

**I.    Legal Standard**

The admission of expert testimony is governed by Federal Rule of Evidence 702. That rule provides that:

> [a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

FED.R.EVID. 702.

The trial court acts as a gate-keeper as the judge must ensure an expert's testimony is both relevant and is based on a reliable foundation. See Daubert, 509 U.S. 579 at 597 (1993); U.S. v. Mooney, 315 F.3d 54, 62 (1st Cir. 2002).

The Daubert Court identified four factors that may assist the trial court in determining whether or not scientific expert testimony was reliable: "(1) whether the theory or technique can be and has been tested; (2) whether the technique has been subject to peer review and publication; (3) the technique's known or potential rate of error; and (4) the level of the theory or technique's acceptance within the relevant discipline." Mooney, 315 F.3d at 62 (citing Daubert, 509 U.S. at 593–94). These factors were later held to apply to all expert testimony, not just scientific testimony. See Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147 (1999). The factors are not a checklist for the trial judge to follow, but rather the inquiry is a flexible one, allowing the trial judge to determine

**Civil No. 08-1448 (GAG)**                                    3

and adapt these factors to fit the particular case at bar.  See Kumho, 526 U.S. at 150; Milward v. Acuity Specialty Prods. Grp., Inc., 639 F.3d 11, 15-16 (1st Cir. 2011).  "Proponents . . . do not have to demonstrate that the assessments of their experts are correct, only that their opinions are reliable." Rivera-Cruz v. Latimer, Biaggi, Rachid & Godreau, LLP, 2008 WL 2446331 at *2 (D.P.R. June 16, 2008) (citing Ruiz–Troche v. Pepsi Cola of P.R. Bottling Co., 161 F.3d 77, 85 (1st Cir. 1998)). While the general focus of this inquiry is the principles and methodology relied upon by the expert, the court may consider the congruity of the data and the opinion proffered by the expert.  See Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997) (holding a court may conclude there is too great an analytical gap between data and the opinion proffered); Ruiz–Troche, 161 F.3d at 81.

## II.    Legal Analysis

### A.    Plaintiffs' Objections to Renfroe's Opinions

Plaintiffs move to exclude three opinions, or portions thereof, held by Renfroe.  The court shall analyze each separately.

#### 1.    Renfroe's Opinion No. 2 and Final Conclusion

Renfroe's Opinion No. 2 states:

> In looking at the approach to the VRC with the doors open with no barrier on the far side, the danger was open and obvious.  Anyone riding up to this platform would know that this is not something meant for passengers, especially those driving in a golf car.  Michael Jackson and Mr. Pérez García placed themselves in an obviously perilous situation.  This is especially true since Michael Jackson said that the vehicle had a history of brake failure and that the vehicle was operating abnormally fast as reported to him after Bayamón had "repaired" it.  In addition, there is evidence in the record that Mr. Pérez García was informed by Michael Jackson about problems with the golf car and that on prior occasions Mr. Pérez García had ridden in the VRC while a passenger in the golf car.

(See Docket No. 635-1 at 19.)  Plaintiffs argue Renfroe applies no scientific or specialized knowledge to reach this conclusion.  (See Docket No. 635 at 10.)  Renfroe himself admits that 'anyone' would know that this VRC is not meant for passengers and that anyone would know this is an 'open and obvious' danger.  These statements lead the court to agree with Plaintiffs that no scientific or specialized knowledge was applied to arrive at this conclusion.  Therefore, no expert is needed to testify as to such.  The court also notes PRPA and CAF plan to use the assumption of risk defense in this case.  Allowing an expert to take the stand and testify that anyone would

recognize the perilous danger of riding on the VRC would take the ultimate question of responsibility away from the jury as an expert just testified that Plaintiff must have understood the risk and accepted it. The court cannot allow such testimony from an expert.

This same sentiment is present in Renfroe's Final Opinion when he states, "These specific vehicle defects were compounded as a result of poor maintenance on the golf car and poor judgment by Mr. Jackson and Mr. Perez Garcia." This statement, as it pertains to Jackson and Plalintiff, is similar to the ultimate conclusion of Opinion No. 2 and shall also be excluded.

Additionally, in Opinion No. 2, Renfroe attempts to use what Jackson said to Plaintiff as further proof that Plaintiff accepted the risk of riding in a golf car with a braking problem. This evidence constitutes hearsay and is impermissible. Therefore, the court **GRANTS** Plaintiffs motion as to Renfroe's Opinion No. 2 and his Final Opinion.

### 2. Renfroe's Opinions Nos. 3 and 3(d)

Plaintiffs object to Renfroe's Opinions No. 3 and 3(d) regarding the possibility that Plaintiff accidentally hit the accelerator prior to the golf car accelerating forward. (See Docket No. 635 at 12.) Plaintiffs argue there is no factual evidence to support such a conclusion and that, without such evidence, it is improper for Renfroe to testify as to that possibility. (See id.) CAF and PRPA argue the opinion is related to Renfroe's expertise as an accident reconstructionist and in that role it is proper for Renfroe to explore all possibilities that could lead to the accident.

Renfroe has experience as an accident reconstructionist and his opinion is guided by that training and experience. In arriving at this opinion, Renfroe relied upon the measurements of the golf car and Plaintiff's testimony that he was carrying luggage on the floor of the golf car by his feet. This expert opinion is held to be based on the data derived from the incident and to not be so out of the sphere of possibility as to create too large of a gap between the data and the opinion. See Joiner, 522 U.S. at 146 ( "A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered."). Therefore, the court **DENIES** Plaintiffs' motion to exclude Opinions Nos. 3 and 3(d) at Docket No. 635.

### B. Club Car's Objections to Renfroe's Testimony

Club Car seeks to exclude Renfroe's testimony due to Rules 702, 401, 402 and 403, arguing

**Civil No. 08-1448 (GAG)**                                5

that his opinions do not meet the Daubert standard and that his reliance upon past incidences with golf cars are substantially dissimilar as to be not relevant to the present case. (See Docket No. 647 at 5.) From the outset, the court notes Renfroe has a high level of education and vast experience as a mechanical engineer and is qualified to testify in that capacity an expert witness.

Nearly all the opinions Club Car seeks to exclude involve the braking system and other feasible designs Club Car could have used to enhance its braking system. Renfroe's opinions regarding the robustness of the braking system, the defect in coupling of the brake and accelerator pedals, the unshielded accelerator pedal, and the omission of a hand brake all relate to the braking system. All of these subjects fall within Renfroe's area of expertise and are found to be admissible as such. Each touches upon the potential design defect of the subject golf car, which will be helpful to the jury. Therefore, the court **DENIES** Club Car's motion to exclude this testimony at Docket No. 647.

Club Car additionally argues that Renfroe should be barred from testifying as to prior similar incidences. (See Docket No. 647 at 11.) As noted in Club Car's brief, Club Car made a separate motion regarding these incidences at Docket No. 618, which was Granted in part and Denied in part at Docket No. 729. The court adopts its reasoning in that order. Renfroe shall not be allowed to discuss prior incidences that the court has already found to be dissimilar to the present incident. Therefore, the court **GRANTS** Club Car's motion pertaining to prior incidences as discussed previously at Docket No. 729.

**III.   Conclusion**

For the reasons set forth above, the court **GRANTS in part and DENIES in part** Plaintiffs' motion at Docket No. 635 and **GRANTS in part and DENIES in part** Club Car's motion at Docket No. 647.

**SO ORDERED**.

In San Juan, Puerto Rico this 6th day of July, 2012.

*S/ Gustavo A. Gelpí*
GUSTAVO A. GELPÍ
United States District Judge